First case this afternoon, in fact it's our last case this afternoon, is Morton v. S&M Property Management at Al for the appellate attorneys here. Okay, so we have just one attorney here and that would be Mr. Riva for the appellate, correct? Correct. Okay, and I think I failed to say this is case number 4120117. All right, Mr. Riva, looks like you've got the floor if you would. I do. You said this is your first and your last and obviously it would be your shortest. It probably would have been your shortest even had there been others behind me. The plaintiff sued on a promissory note, obtained summary judgments, the defendants filed their brief, we filed ours, they did not file a reply brief, they waived the oral argument, so it seems to me to tell me what they think of their case. But having said that, and under the approach advocated by the judge I worked for, working right out of law school 30 years ago to never take anything for granted, I'm here to just highlight our position and answer any questions and alleviate hopefully any concerns. I just had one question. If FDIC paid the note back, paid off Morton for the deficiency, does that make any difference? Because we really don't know that, do we? We don't know that. I mean, I know that they did, but it's not in the record, I suppose. Your theory is even if that occurred, I guess FDIC could then ask for Morton, ask Morton for reimbursement from you if there was a double payment? Right, and for purposes of our case, plaintiff against defendants, we urge that it's actually under the law, the defendant's burden, if there's been some type of payment or some type of reduction. All we have to show under this Leopold and the Tuttle case, all we have to say is here's our note, we're the owner of it, and you acknowledge as the defendants did that they made it, signed it, and they didn't deny under oath the assignment of it. Well, would I be wrong to presume if FDIC had paid Morton, wouldn't they have taken possession of the note? Sure. We would have been committing a fraudulent practice to sue the defendants on a note that we didn't have ownership of to try and get a double recovery. But why is this issue even before us? You attached an affidavit that didn't contain a list of loans paid by the FDIC, and so we don't, there's nothing affirmatively demonstrating this other than as Justice Turner pointed out, the absence of, or the inference that, gee, if FDIC had paid it, they would have had the note. Why wasn't there either a list showing this wasn't paid, or how about an affidavit from someone at the bank saying, no, FDIC hasn't paid this. Wouldn't that have addressed the matter? I suppose in hindsight that may have. How much hindsight does that require? Wasn't that the only thing that they really claimed at the trial court? Namely, gee, how do we know if FDIC paid this? A one-sentence statement from a bank officer saying FDIC didn't, under oath, John Smith. Again, in hindsight, to cover everything, to be frank, somebody else in the office handled the case. I usually go with, being an appellate advocate, I cover all bases six different ways. But our explanation is, if you look at these cases that we've cited, there's even been cases like this Leopold case where all the plaintiff comes in and says, here's the note. Gets the defendant. I signed it. And then they rest. And that's enough to establish their case. So what happened here was we alleged we were the owner and holder of it. We'd acquired it from the FDIC. The answer did not deny the assignment under oath was required. The answer did not do anything other than claim insufficient knowledge without a proper affidavit of want of knowledge. So at that point, we felt that we had the case won on all issues. They admitted that we were the holder of the note. And everything else was just specious arguments where they just spun various – frankly, had we not put in the record this purchase agreement, while we had moved for judgment on the pleadings, I don't think there's any doubt that they admitted that we had a note that was not paid, that they had signed, that had been transferred to us. So the fact that the – I think you're focusing, I believe, on what I think is their last argument, not the first two. That's the only question I have here that seems to be not addressed. There's an inference that – and in response to Justice Turner's question, you said, well, the FDIC, had they paid us, would have taken the note. We would no longer have had it. It would be a fraud. I don't know anything about banking law or banking procedures. I have no reason to think what you just said to him is not correct. But how do I know that, looking at this record? Would the trial judge be – are we all expected – is this just such common knowledge that in the absence of your putting that in the record someplace, that we should just all know it? Well, let me take a different tack if I may here, try and resolve the conundrum here. Again, I keep repeating, these cases suggest that it's only our burden to prove acknowledgement of the note and possession of it, and at that point, everything else becomes a defense burden. There's case law that says on summary judgment, you look at the record and the burden through the prism of a substantive burden, who would have the burden of proof, and what it might be if you were at trial. And you claim the defendant had the duty to raise payment as a defense. Right. And whether it's called payment or – they've got to raise something. Set off or whatever. If they thought that there was a problem on this issue and that it wasn't just rank speculation, they should have asked for discovery, they could have done a 191B affidavit, they could have subpoenaed records, they could have taken a deposition of someone from the FDIC. That's their burden. All we had to do was establish our prima facie case, and then at that point, everything shifts to them. They're the ones that have to not speculate, and that's really what they're doing. In our view, they're speculating that because a part of the agreement says that possibly some notes were paid, I think your point, and none are listed, that somehow because there's a statement of some remote possibility, and then a list that really is not a list, it's just a blank, that somehow creates a question of whether this loan somehow was actually paid. In this case, too, though, Mr. Riva, you could have in the complaint, or the plaintiff could have in their complaint said, you know, this bank was taken over by the FDIC, but FDIC did not pay this note. We're the holder of the note, we're entitled to payment. And then they would have had to come up with something to show otherwise. Again, had we the benefit of hindsight, maybe that's what should have been done, but my point is it wasn't necessary to be done, because when we allege that we're the owner and holder, to them to raise by affirmative defense, or find out through discovery that somehow we ended up getting paid and the bank got paid by the FDIC or through some receivership so that we'd be going for a double recovery. They filed an answer that had affirmative defenses in there, but that was not one of them. So... I have one more question. I'm going to plow through everything again, but you probably don't want me to do that. I understand the courts, and that's my best... So if we affirm, we take the message back that we affirm despite the sloppiness here, and please don't leave these threads hanging in the future? I will have no problem doing that, because one of my partners is the son of the owner of the bank. Okay. And Frank, I don't care how you dispose of it, as long as it says affirmed at the end, no matter what you think. Just a couple things. Did the opposing counsel say that he would not be here for argument today? I think... Well, first of all, I don't think they even asked for it on their brief, but I think when you set the case, the phone call I received was that the clerk's office called me saying that he had waived, and they wanted to know whether we wanted to waive, and the client didn't want to waive, and again, under my approach of making sure that... I'm glad I came here, actually. Well, my last question probably doesn't have anything to do with the outcome here, but since we've got an expert in the room, I might as well ask you. I understand that Morton acquired Citizens Assets. Right. Why would the FDIC pick off any of the notes that Morton acquired? Is this standard banking practice? Something to do with the federal government all mixed up like they can be sometimes acquired or what? I couldn't tell you. I'm a litigator, not a banking expert. It seemed kind of odd to me that you ever had that possibility, why the FDIC would not want to get all of the money it could and put all of the onus on the acquiring bank to track down assets. It doesn't make a lot of sense to me, frankly. Which, again, kind of leads into my argument that I don't know why we would have had... Just common sense tells me that we would not have had, and if there was such an unusual circumstance, it would have been listed in that section 45 or 4.5 of the agreement, and that's an unusual occurrence, and since it's not in there, the defendants didn't find evidence, let alone being one that was paid somehow, that they lose. Okay, thank you. Thank you, your honors. We'll take the matter into advisement. The court stands at recess. Thank you.